```
 1                   IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF SOUTH CAROLINA
 2                          COLUMBIA DIVISION


 3
     UNITED STATES OF AMERICA,      )      Cr. No. 3:12-512
 4                                  )
                                    )
 5   VERSUS                         )      Columbia, SC
                                    )      July 9, 2013
 6   SHARONDA SIMS,                 )
                                    )
 7        Defendant.                )
                                    )
 8   --------------------------)
                                    )
 9   UNITED STATES OF AMERICA,      )      Cr. No. 3:12-733
                                    )
10                                  )
     VERSUS                         )
11                                  )
     MICHAEL SMITH,                 )
12                                  )
          Defendant.                )
13                                  )
     --------------------------)

14

15            TRANSCRIPT OF CHANGE OF PLEA HEARING
          BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.
16                UNITED STATES DISTRICT JUDGE

17

18   Appearances:

19   For the Government:     MARK C. MOORE, ESQ.
                             Assistant U.S. Attorney
20                           1441 Main Street, Suite 500
                             Columbia, SC  29201
21
     For Defendant Sims:     DEBRA Y. CHAPMAN, ESQ.
22                           P.O. Box 2025
                             Columbia, SC  29201
23
     For Defendant Smith:    NATHANIEL ROBERSON, ESQ.
24                           1708 Richland Street
                             Columbia, SC  29201
25
```

1
Court Reporter:        Gary N. Smith, CM
2                       901 Richland Street
                        Columbia, SC  29201
3                       (803) 256-7743

4           Stenotype/Computer-aided Transcription

5    * * * * * * * * * * * * * * * * * * * * * * * * *

6           THE COURT:  All right.  We have two U.S. Attorneys

7    working on these two cases?

8           MR. MOORE:  I have both of them.

9           THE COURT:  All right.  Mr. Moore, would you call the

10   next two cases?

11          MR. MOORE:  Yes, sir, Your Honor.  This is United

12   States of America versus Sharonda Sims, the criminal number is

13   3:12-512, and United States versus Michael Smith, the criminal

14   number is 3:12-733.  We are here for the purpose of guilty

15   pleas for both defendants.

16          Ms. Sims is here represented by Ms. Chapman,

17   Mr. Smith is here represented by Mr. Roberson, and they both

18   have filed written plea agreement.

19                   EXAMINATION OF THE DEFENDANTS

20   BY THE COURT:

21   Q.  Ms. Sharonda Sims -- you don't need to stand up -- you are

22   represented by Attorney Debra Chapman?

23   A.  (By Ms. Sims)  Yes, sir.

24   Q.  And I am informed that you want to plead guilty to count 1

25   of the indictment pending against you; is that correct?

1    A.  (By Ms. Sims)  Yes, sir.

2    Q.  To my left is Mr. Michael R. Smith?

3    A.  (By Mr. Smith)  Yes, sir.

4    Q.  Mr. Smith, you are represented by Attorney Nathaniel

5    Roberson?

6    A.  (By Mr. Smith)  Yes, sir.

7    Q.  And I'm informed that you want to plead guilty to counts 1

8    and 4 of the indictment in your case; is that correct?

9    A.  (By Mr. Smith)  Yes, sir.

10   Q.  Let me say, before I can accept the guilty plea from either

11   of you I have to ask you a series of questions to be sure your

12   plea is being made freely and voluntarily.  If you do not

13   understand any of the words that I use or any of the questions

14   that I ask you, you should tell me so that I can stop and go

15   over them with you a second time.

16           Also if at any time during this process you wish to

17   stop and speak with your attorney, if you will just give me a

18   signal, I will be glad to take a recess and let you confer with

19   counsel.  Do you understand all that Ms. Sims?

20   A.  (By Ms. Sims)  Yes, sir.

21   Q.  Do you understand all of that Mr. Smith?

22   A.  (By Mr. Smith)  Yes, sir.

23           THE COURT:  All right.  The clerk will please

24   administer the oath to both defendants.

25           THE CLERK:  Please raise your right hands.

1              (Defendants sworn by the clerk).

2    BY THE COURT:

3    Q.  Do you both understand that you have just taken an oath

4    promising to tell the truth and that means that your answers to

5    my questions must be truthful.  If your answers are not

6    truthful you could be charged with another federal crime of

7    perjury or making a false statement.  Do you understand that

8    Ms. Sims?

9    A.  (By Ms. Sims)  Yes, sir.

10    Q.  And Mr. Smith?

11    A.  (By Mr. Smith)  Yes, sir.

12    Q.  Now the process of taking a guilty plea normally takes

13    about half an hour.  We can do it one of two different ways, we

14    can take your cases one at a time and I go through the process

15    with Ms. Sims first and then start over with Mr. Smith, or we

16    can do it concurrently where I ask the question one time and

17    look to Ms. Sims first to get an answer and then to Mr. Smith

18    to get an answer to that same question.

19              Obviously it saves time for the court personnel, for

20    your lawyers and everyone to do it concurrently, but I want to

21    emphasize that if we do it that way -- you are charged in two

22    separate unrelated cases, your cases have nothing to do with

23    each other -- we would expect a truthful answer from you as

24    pertains to your case.

25              THE COURT:  So, first let me ask if the attorneys

1   have any objection to a concurrent plea.  Ms. Chapman?

2           MS. CHAPMAN:  No, Your Honor.

3           THE COURT:  Mr. Roberson?

4           MR. ROBERSON:  No, Your Honor.

5           THE COURT:  Does the government have any objection?

6           MR. MOORE:  No, Your Honor.

7   BY THE COURT:

8   Q.  Ms. Sims, do you have any objection to proceeding

9   concurrently?

10  A.  (By Ms. Sims)  No, sir.

11  Q.  Mr. Smith, do you have any objection?

12  A.  (By Mr. Smith)  No, sir.

13  Q.  All right.  Again, this is not a group project, your cases

14  are separate and independent.  Do not feel compelled to answer

15  any question the same way the other defendant has answered the

16  question, because his or her situation may be totally different

17  from yours.  So give me a truthful answer as it pertains to

18  you.

19           So, first let me get some background information.

20  Ms. Sims, how old are you?

21  A.  (By Ms. Sims)  34.

22  Q.  How far did you go in school?

23  A.  (By Ms. Sims)  10th grade.

24  Q.  Are you currently under the influence of any drug,

25  medicine, or alcohol?

```
 1   A.  (By Ms. Sims)  No, sir.

 2   Q.  Have you ever been treated for mental illness or narcotics

 3   addiction?

 4   A.  (By Ms. Sims)  No, sir.

 5   Q.  Do you understand what is happening here in court today?

 6   A.  (By Ms. Sims)  Yes, sir.

 7   Q.  You are obviously able to read and speak the English

 8   language?

 9   A.  (By Ms. Sims)  Yes, sir.

10   Q.  All right.  Then Mr. Smith, how old are you?

11   A.  (By Mr. Smith)  32.

12   Q.  How far did you go in school?

13   A.  (By Mr. Smith)  11th grade.

14   Q.  Are you currently under the influence of any drug or

15   medicine or alcohol?

16   A.  (By Mr. Smith)  No, sir.

17   Q.  Have you ever been treated for mental illness or narcotics

18   addiction?

19   A.  (By Mr. Smith)  No, sir.

20   Q.  Do you understand what is happening here in court today?

21   A.  (By Mr. Smith)  Yes, sir, I understand.

22   Q.  I'm sorry?

23   A.  (By Mr. Smith)  Yes, sir, I do understand.

24          THE COURT:  Do either of the attorneys have any

25   questions or concerns about competency?  Ms. Chapman?
```

```
 1            MS. CHAPMAN:  No, Your Honor.

 2            THE COURT:  Mr. Roberson?

 3            MR. ROBERSON:  None, Your Honor.

 4            THE COURT:  Does the government have any questions

 5  about the competency --

 6            MR. MOORE:  Your Honor, I will say for the record

 7  that both of them have been interviewed by agents -- Ms. Sims

 8  over a lengthy period of years -- and the government has no

 9  concerns about competence.

10  BY THE COURT:

11  Q.  All right.  Have each of you had an ample opportunity to

12  discuss your case with your attorney?  Ms. Sims?

13  A.  (By Ms. Sims)  Yes, sir.

14  Q.  Mr. Smith?

15  A.  (By Mr. Smith)  Yes, sir.

16  Q.  Are you satisfied with your attorney's representation?

17  Ms. Sims?

18  A.  (By Ms. Sims)  Yes, sir.

19  Q.  Mr. Smith?

20  A.  (By Mr. Smith)  Yes, sir.

21  Q.  Has your attorney done everything that you have asked him

22  or her to do for you?  Ms. Sims?

23  A.  (By Ms. Sims)  Yes, sir.

24  Q.  Mr. Smith?

25  A.  (By Mr. Smith)  Yes, sir.
```

1    Q.  Is there anything that you would like for your attorney to

2    do for you at this time before we proceed any further?

3    Ms. Sims?

4    A.  (By Ms. Sims)  No, sir.

5    Q.  Mr. Smith?

6    A.  (By Mr. Smith)  No, sir.

7    Q.  All right.  Do you both understand that under the

8    constitution and laws of the United States you have a right to

9    plead not guilty to the charges against you, and if you plead

10   not guilty you would have the right to a trial before a jury on

11   these charges?  Do you understand all of that Ms. Sims?

12   A.  (By Ms. Sims)  Yes, sir.

13   Q.  Mr. Smith?

14   A.  (By Mr. Smith)  Yes, sir.

15   Q.  If you decided to plead not guilty and request a trial, you

16   would be entitled to a number of procedural rights as a

17   defendant in this court.  I want to list these rights for you

18   so that you will have a clear understanding of what rights you

19   possess and what you will give up if you plead guilty.

20           If you requested a jury trial, first of all at that

21   trial you would have the right to the assistance of counsel for

22   your defense.  At a trial you would be presumed to be innocent

23   and the government would be required to prove you guilty by

24   competent evidence and beyond a reasonable doubt, and you would

25   not have to prove that you were innocent.  Do you understand

1  all of that Ms. Sims?

2  A.  (By Ms. Sims)  Yes, sir.

3  Q.  Mr. Smith?

4  A.  (By Mr. Smith)  Yes, sir.

5  Q.  All right.  At a trial, the witnesses for the government

6  would have to come to court and testify in your presence, and

7  your attorney could cross-examine the witnesses for the

8  government, he or she could object to evidence that was offered

9  by the government, and he or she could offer evidence on your

10  behalf.

11         At a trial you would have the right to take the

12  witness chair and testify if you wanted to, but you would also

13  have the right not to testify.  And if you decided that you did

14  not want to testify, I would instruct the jury that they could

15  not hold that against you in any way in determining guilt or

16  innocence in your case.

17         And finally, at a trial, you would have the right to

18  have the court issue subpoenas to compel the attendance of

19  witnesses that you wish to have testify in your defense.

20         Now, do you understand all of these rights that I

21  have just outlined for you?  Ms. Sims?

22  A.  (By Ms. Sims)  Yes, sir.

23  Q.  Mr. Smith?

24  A.  (By Mr. Smith)  Yes, sir.

25  Q.  All right.  Do you understand that if you plead guilty and

```
 1   I accept your plea, that means you will give up your right to a

 2   jury trial and all the rights I have just gone over with you,

 3   there will be no trial in your case, and I will accept your

 4   plea of guilty and sentence you on the basis of your guilty

 5   plea.  Do you understand all of that Ms. Sims?

 6   A.  (By Ms. Sims)  Yes, sir.

 7   Q.  Mr. Smith?

 8   A.  (By Mr. Smith)  Yes, sir.

 9   Q.  Do you understand also that if you plead guilty, that means

10   that you will have to give up your right not to incriminate

11   yourself, since I will ask you questions about what you did in

12   order to satisfy myself that you are guilty as charged, and

13   that means you will have to acknowledge your guilt here in

14   court under oath.  Do you understand all that Ms. Sims?

15   A.  (By Ms. Sims)  Yes, sir.

16   Q.  Mr. Smith?

17   A.  (By Mr. Smith)  Yes, sir.

18            THE COURT:  All right.  Do we have any questions

19   about possible deportation as a result of --

20            MR. MOORE:  No, sir, Your Honor.

21   BY THE COURT:

22   Q.  Now that I have discussed all of these rights with you, do

23   you still want to plead guilty?  Ms. Sims?

24   A.  (By Ms. Sims)  Yes, sir.

25   Q.  Mr. Smith?
```

1   A.  (By Mr. Smith)  Yes, sir.

2   Q.  All right.  Have each of you received a copy of the

3   indictment, that is, the written charges made against you in

4   your case?  Ms. Sims?

5   A.  (By Ms. Sims)  Yes, sir.

6   Q.  Mr. Smith?

7   A.  (By Mr. Smith)  Yes, sir.

8   Q.  Have you discussed the charges in the indictment and the

9   case in general with your attorney?  Ms. Sims?

10  A.  (By Ms. Sims)  Yes, sir.

11  Q.  Mr. Smith?

12  A.  (By Mr. Smith)  Yes, sir.

13  Q.  All right.  Now, I'm now going to focus on the charges

14  against Ms. Sims only.  Mr. Smith, this does not apply to you,

15  we will come back to you in just a moment.

16          Ms. Sims, I'm going to talk about your charges now.

17  You are charged in count 1 as follows -- I want to be sure you

18  understand the charge that you offer to plead guilty to.

19          In count 1 the grand jury has charged "That between

20  on or about early November 2010 and April of 2011, in the

21  District of South Carolina and elsewhere, you, as a principal

22  and also as aider and abettor, and as a co-participant in

23  jointly undertaken criminal activity, did knowingly, in and

24  affecting commerce -- excuse me -- in and affecting interstate

25  commerce, recruit, entice, harbor, transport, provide, and

1  obtain a minor for the purpose of causing said minor to engage

2  in a commercial sex act, having had reasonable opportunity to

3  observe said minor, and with knowledge and in reckless

4  disregard of the fact that said minor had not obtained the age

5  of 18 years."  All of which was done in violation of federal

6  law.  Do you understand that charge Ms. Sims?

7  A.  (By Ms. Sims)  Yes, sir.

8  Q.  Now if this case were to go to trial there are three

9  essential elements of the crime charged in count 1 that the

10  government would have to prove beyond a reasonable doubt.  If

11  we held a trial I would inform the jury what these three

12  elements are -- and I will tell the jury that if the government

13  failed to prove any one of these beyond a reasonable doubt,

14  then the jury would be required to find you not guilty.

15        These three elements are, as follows: number one,

16  that you knowingly recruited or enticed or harbored or

17  transported or provided or obtained a person in or affecting

18  interstate or foreign commerce, or benefited financially from

19  the same; number two, that you knew that the person referenced

20  above was a minor, that is under the age of 18; and number

21  three, that you knew that the minor referenced above would be

22  used or caused to engage in commercial sex acts.  Do you

23  understand all three of those elements, Ms. Sims?

24  A.  (By Ms. Sims)  Yes, sir.

25  Q.  Now I'm required by law to tell you about the maximum

1  possible penalty and the minimum penalty.  Under federal law

2  there is a mandatory minimum sentence of 10 years.  In other

3  words, you must receive a sentence of at least 10 years, and

4  then there's a maximum sentence of potentially of life

5  imprisonment.  The maximum term of supervised release following

6  imprisonment would be five years, and the fine could be up to

7  $250,000.  Do you understand all of that Ms. Sims?

8  A.  (By Ms. Sims)  Yes, sir.

9  Q.  All right.  Now, let's now turn our attention to Mr. Smith.

10  Ms. Sims, this does not apply to you, this applies just to

11  Mr. Smith.

12         Mr. Smith, first of all, in count 1 the indictment,

13  the grand jury, has charged as follows:  "Beginning at a time

14  unknown to the grand jury, but at least in the spring of 2010

15  and continuing up to the date of the indictment, in the

16  District of South Carolina, you knowingly and intentionally did

17  combine, conspire, agree, and have a tacit understanding with

18  others, known and unknown to the grand jury, to knowingly,

19  intentionally, and unlawfully possess with intent to

20  distribute, and did distribute, cocaine and cocaine base,

21  commonly known as crack cocaine, both of which are Schedule II

22  controlled substances, said conspiracy involving 500 grams or

23  more of cocaine, and 280 grams or more of crack cocaine, in

24  violation of federal law."  Do you understand that charge in

25  count 1 against you, Mr. Smith?

1   A.   (By Mr. Smith)  Yes, sir.

2   Q.   Now, if we held a trial in your case, there are three

3   essential elements the government would be required to prove

4   under count 1.  First of all, let me tell you for your

5   information what a conspiracy is, because count 1 charges you

6   with being a member of a criminal conspiracy.

7            A criminal conspiracy is an agreement or a mutual

8   understanding knowingly made or knowingly entered into by at

9   least two people to violate the law by some joint or common

10  plan or course of action.  A conspiracy is in a very true sense

11  a partnership in crime.

12           Now in your case, if we held a trial on count 1, the

13  government would have to prove the following essential elements

14  beyond a reasonable doubt:

15           Number one, the conspiracy, as I have just defined

16  that term for you, was knowingly and willfully formed and was

17  in existence at or about the dates set forth in the indictment;

18  number two, that you joined the conspiracy with knowledge of

19  the conspiracy's unlawful purpose; and number three is the

20  quantity requirement.

21           THE COURT:  And Mr. Moore, the government is just

22  relying on the crack component, Mr. Moore?

23           MR. MOORE:  Just the crack.

24  BY THE COURT:

25  Q.   The quantity requirement is 280 grams or more of crack

1    cocaine or cocaine base.  That's one of the three elements.

2    The government can prove this quantity requirement, the 280

3    grams or more of crack, any way of three different ways.

4         They can prove that you yourself distributed that

5    quantity, or they can prove that you agreed to assist someone

6    else in distributing that quantity, or that the distribution of

7    that quantity by the conspiracy as a whole was reasonably

8    foreseeable to you and was within the scope of your agreement

9    at the time that you joined the conspiracy.

10        Do you understand those three elements that the

11   government would be required to prove?

12   A.  (By Mr. Smith)  Yes, sir.

13   Q.  All right.  Now, the possible penalty for count 1, there's

14   a mandatory minimum sentence of 10 years.  You must receive a

15   sentence of at least 10 years.  There's a potential maximum

16   sentence of life imprisonment, it could be up to life

17   imprisonment.  The fine could be up to $10 million, the period

18   of supervised release following imprisonment is five years, and

19   then there is a mandatory special assessment of $100.  Do you

20   understand all of that --

21   A.  Yes, sir.

22   Q.  -- Mr. Smith?  I'm sorry?

23   A.  (By Mr. Smith)  Yes, sir.

24   Q.  Now moving on to count 4.  In count 4 the charge is as

25   follows:  "On or about February the 23rd, 2012, in the District

1   of South Carolina, you knowingly did possess firearms during

2   and in relation to a drug trafficking offense, said drug

3   trafficking offense being a felony punishable in a court of the

4   United States."  Do you understand that charge, Mr. Smith?

5   A.  (By Mr. Smith)  Yes, sir.

6   Q.  If this case were to go to trial on count 4 there are three

7   essential elements of the crime charged there the government

8   would be required to prove beyond a reasonable doubt.  These

9   three elements are:  Number one, that you were engaged in

10  illegal drug trafficking; number two, that you possessed a

11  firearm; and number three, that the firearm was connected to

12  and was designed to further your drug trafficking in some way.

13  Do you understand those three elements?

14  A.  Yes, sir.

15  Q.  Now, the possible penalty for a violation of count 4, the

16  law provides for a mandatory minimum sentence of five years,

17  the maximum sentence could be up to life imprisonment.

18  Whatever sentence you receive must run consecutive to whatever

19  sentence you receive on count 1.  That means the two sentences

20  would be stacked on top of each other, or added together.

21          And then the fine could be up to $250,000, supervised

22  release following imprisonment will be not more than five

23  years, plus a mandatory special assessment of $100.  Do you

24  understand all of that regarding the possible penalty?

25  A.  (By Mr. Smith)  Yes, sir.

1          THE COURT:  All right.  I find then for the record

2   that both defendants understand and comprehend the nature of

3   the charges against them generally, they also understand the

4   essential elements of the crimes that they have offered to

5   plead guilty to, and they understand the maximum penalty

6   provided by law, and they also understand the mandatory minimum

7   penalty provided by law with regard to some of the counts.

8   BY THE COURT:

9   Q.  Now let me -- back to both of you, I'm speaking to both of

10  you again now.  If you plead guilty, I will have to determine

11  the appropriate sentence to be imposed at a sentencing hearing

12  to be conducted in about two months.

13          In determining the appropriate sentence I'm required

14  to consider the statutory sentencing factors set out in Section

15  3553 of Title 18 of the federal code.  I'm also required to

16  consider the advisory sentencing guidelines issued by the

17  United States Sentencing Commission.  And then finally I'm

18  required to consider the mandatory minimum penalty provided by

19  law, and the maximum penalty provided by law.

20          Have you talked with your lawyers about how all these

21  federal sentencing laws might come into play at your

22  sentencing?  Ms. Sims?

23  A.  (By Ms. Sims)  Yes, sir.

24  Q.  Mr. Smith?

25  A.  (By Mr. Smith)  Yes, sir.

1  Q.  All right.  You understand then that regarding the advisory

2  sentencing guidelines, we cannot determine your guideline range

3  today?  We have to wait until a presentence report has been

4  completed and you and the government have been given an

5  opportunity to object to the reported facts and guideline

6  application recommended by the probation officer.  Do you

7  understand all of that Ms. Sims?

8  A.  (By Ms. Sims)  Yes, sir.

9  Q.  Mr. Smith?

10  A.  (By Mr. Smith)  Yes, sir.

11  Q.  All right.  Do you understand that if the sentence you

12  receive in your case is more severe than you expected it to be,

13  you will still be bound by your plea and will have no right to

14  withdraw your plea.  Do you understand that Ms. Sims?

15  A.  (By Ms. Sims)  Yes, sir.

16  Q.  Mr. Smith?

17  A.  (By Mr. Smith)  Yes, sir.

18  Q.  Do you understand that parole has been abolished and that

19  if you are sentenced to prison you would not be released early

20  on parole or probation?  Ms. Sims?

21  A.  (By Ms. Sims)  Yes, sir.

22  Q.  Mr. Smith?

23  A.  (By Mr. Smith)  Yes, sir.

24  Q.  Do you understand that the sentence imposed may be

25  different from any estimate that your attorney may have given

1    you?  Ms. Sims?

2    A.  (By Ms. Sims)  Yes, sir.

3    Q.  Mr. Smith?

4    A.  (By Mr. Smith)  Yes, sir.

5    Q.  All right.  I mentioned supervised release a moment ago.

6    If you plead guilty and if you are sentenced to prison, the law

7    requires that upon your release from prison you be subjected to

8    a term of supervised release.

9           If you are placed on supervised release you are under

10   a court order that sets out rules for your behavior while on

11   supervised release.  If you were placed on supervised release

12   and if you violate any of those rules of behavior, you could be

13   given additional time in prison.  Do you understand all that

14   Ms. Sims?

15   A.  (By Ms. Sims)  Yes, sir.

16   Q.  Mr. Smith?

17   A.  (By Mr. Smith)  Yes, sir.

18   Q.  All right.  Has anyone threatened you, or threatened anyone

19   else, or forced you in any way to plead guilty?  Ms. Sims?

20   A.  (By Ms. Sims)  No, sir.

21   Q.  Mr. Smith?

22   A.  (By Mr. Smith)  No, sir.

23   Q.  Are you pleading guilty of your own free will because you

24   are guilty?  Ms. Sims?

25   A.  (By Ms. Sims)  Yes, sir.

1  Q.  Mr. Smith?

2  A.  (By Mr. Smith)  Yes, sir.

3  Q.  All right.  I have been informed that you have both signed

4  a written plea agreement, negotiated with the assistance of

5  your attorney in this case.  Is it correct that you have

6  entered into a written plea agreement with the prosecutors in

7  this case?  Ms. Sims?

8  A.  (By Ms. Sims)  Yes, sir.

9  Q.  Mr. Smith?

10  A.  (By Mr. Smith)  Yes, sir.

11          THE COURT:  All right.  At this time I'm going to ask

12  Mr. Moore, Mark Moore, the Assistant U.S. Attorney who is

13  handling these two cases to summarize for me the plea

14  agreements.  Are you going to do them together or separate?

15          MR. MOORE:  I was going to do them together because

16  they are very similar.  If you want me to do them one by one, I

17  will.  That's up to Your Honor.

18          THE COURT:  Well, if the paragraphs are very similar,

19  let's do it together.

20  BY THE COURT:

21  Q.  Let me say now, as I have stressed before, your two cases

22  are entirely separate from each other, there's no overlap.

23  There's nothing in common in these two cases.  But the plea

24  agreements, both have some standard paragraphs that appear in

25  most every plea agreement in this district.

1           In the interest of time, Mr. Moore is going to go

2   through these plea agreements and tell me about the common

3   paragraphs that apply to both the cases, Ms. Sims and

4   Mr. Smith.  Then when we come to paragraphs that are different,

5   he's going to stop and focus on those and tell me about those

6   different paragraphs and who they relate to.

7           So listen very carefully to what he says.  When he

8   finishes, I'm going to ask you if he has correctly summarized

9   what you have agreed to.

10          THE COURT:  Mr. Moore.

11          MR. MOORE:  Yes, sir, Your Honor.

12          In paragraph 1 of both plea agreements they both

13  agree to plead guilty to the offenses you have gone over with

14  them and the elements, and the statutory maxes and mandatory

15  minimums are set out.

16          In paragraph 2, it's a financial information

17  paragraph.  They basically understand -- they are referencing

18  their understanding fines can be imposed and that Your Honor

19  can impose special assessments, and they are agreeing to pay

20  the special assessments prior to sentencing.

21          In paragraph 3 we agree that provided they comply

22  with all terms of the agreement we will move to dismiss the

23  remaining counts of the indictment against them.  However, Your

24  Honor can consider those as relevant conduct.

25          In paragraph 4 they agree and understand that the

1   matter of sentencing is within the sole discretion of the

2   court.  They understand that Your Honor will consider -- will

3   sentence them after considering the guidelines as advisory,

4   considering the factors under 18 United States Code Section

5   3553(a).

6           In paragraph 5 they agree that any and all facts to

7   determine their offense level under the guidelines or mandatory

8   minimums, it can be found by the court by a preponderance of

9   the evidence standard at sentencing.

10          In paragraph 6 they both understand the obligations

11  of the government within the plea agreement is expressly

12  contingent upon their abiding by federal and state laws, or the

13  terms and conditions of any bond.

14          And in paragraph 7 they agree that if they fail to

15  comply with any term of the agreement that we can void our

16  obligations within the agreement and that they will not be

17  permitted to withdraw their plea.

18          Paragraph 6 -- paragraph 8 is a cooperation

19  provision.  Both defendants agree to cooperate.  They agree to

20  provide full and complete and truthful information to the

21  government, and they agree that they must provide full and

22  complete and truthful information.  They understand if they do

23  not comply with the terms of this paragraph and they breach,

24  they will not be permitted to withdraw their guilty plea, we

25  can file additional charges, we will argue for a maximum

1  sentence, and we will use any and all information provided by

2  them in the prosecution.

3          Paragraph 9, they both agree to submit to polygraph

4  examinations.  They agree that the polygraph examinations will

5  be determined at our sole discretion, that we control the

6  questions, we control the examiner, and they must pass a

7  polygraph test to our satisfaction.

8          Because these are cooperation agreements, in

9  paragraph 10 we agree that if someone complies with the terms

10  of the agreement we will not use the information they provide

11  against them in calculating the guidelines range, with the

12  exceptions that are set out in paragraph 10.

13          In paragraph 11 we agree that if they cooperate

14  pursuant to the provisions of this agreement and that

15  cooperation is deemed by us as providing substantial assistance

16  in the investigation or prosecution of another person, we will

17  move this court to reduce their sentence under 5K1 of the

18  guidelines, Title 18 United States Code Section 3553(e), and if

19  they continue to provide substantial assistance after

20  sentencing, Federal Rule of Criminal Procedure 35.

21  BY THE COURT:

22  Q.  Let me jump in here and emphasize, this is an important

23  paragraph because it provides for the possibility -- and I

24  stress the word "possibility," because it's not certain at

25  all -- but the possibility of a reduced sentence.

1          This paragraph provides that if you cooperate and you

2     provide information to the government about someone else who

3     has committed a crime, and if that level -- if that cooperation

4     rises to the level of what the law refers to as substantial

5     assistance, not just ordinary every day assistance, but

6     substantial assistance, then the lawyer for the -- the

7     government lawyer will ask me to give you a reduced sentence.

8          The Assistant U. S. Attorney does not have to make

9     that request unless they determine in their opinion that your

10    cooperation is substantial assistance, and also, even if they

11    do make the request for a reduced sentence, it's not binding on

12    me at the sentencing hearing.  I don't have to go along with

13    it.  Do you both understand that?  Ms. Sims?

14    A.  (By Ms. Sims)  Yes, sir.

15    Q.  Mr. Smith?

16    A.  (By Mr. Smith)  Yes, sir.

17          THE COURT:  Please continue.

18          MR. MOORE:  The next paragraph is a forfeiture

19    provision.  They basically agree to forfeit any and all assets

20    that they have derived as a result of the violation of federal

21    law.

22          Paragraph 13 -- the next paragraph for both of

23    them -- beg a moment -- the next paragraph deals with

24    acceptance of responsibility.  And we agree that if they comply

25    with all the conditions of this agreement and they accept

1  responsibility and they do not falsely deny or frivolously

2  contest relevant conduct, then we agree that they will receive

3  three levels of acceptance of responsibility.

4          The next paragraph that is common is that they

5  represent to the court that they have received effective

6  assistance of counsel, that they made this decision to plead

7  guilty voluntarily, and that it is their decision.

8          The next paragraph that is common to both defendants

9  is the provision concerning appellate rights and 2255 rights.

10  They both waive the right to file any direct appeal.  And they

11  both further agree to waive their right to contest their

12  convictions in a habeas petition, or 2255, to the fullest

13  extent permitted by Fourth Circuit law.  In other words, they

14  do not waive their right to lodge collateral attacks with

15  respect to claims of ineffective assistance of counsel or

16  prosecutorial misconduct.

17  BY THE COURT:

18  Q.  Let me interrupt again, this paragraph on appeals is

19  important.  Every defendant in a criminal case has a right to

20  take an appeal to the court of appeals to correct some error

21  that might have occurred, and also a second round of appeal in

22  what is known as a Section 2255 collateral attack on the

23  judgment.

24          These rights can be bargained away or given up as

25  part of the plea bargaining process.  And in your plea

1    agreement, there has been a complete waiver or giving up of the

2    right to take a direct appeal.

3            With regard to the second round of appeals under

4    Section 2255, you would preserve the right to come back and

5    make a claim for ineffective assistance of counsel or

6    prosecutorial misconduct, but you would give up all other

7    appeal rights under a 2255 proceeding.

8            Do you each understand that?  Ms. Sims?

9    A.  (By Ms. Sims)  Yes, sir.

10   Q.  Mr. Smith?

11   A.  (By Mr. Smith)  Yes, sir.

12           THE COURT:  All right.  Please continue.

13           MR. MOORE:  There is a FOI or Privacy Act waiver,

14   which means that they agree that after their conviction they

15   will not file FOI claims attempting to get discovery.

16           That is the entire agreement between the government

17   and Mr. Smith.  There is a provision that is only applicable to

18   Ms. Sims.

19   BY THE COURT:

20   Q.  Mr. Smith, is that a correct summary of your plea agreement

21   that Mr. Moore has just given us?

22   A.  (By Mr. Smith)  Yes, sir.

23           THE COURT:  All right.  Tell us about the unique

24   paragraph on Ms. Sims.

25           MR. MOORE:  Ms. Sims has a contingent 11(c)(1)(C,

1   which is that we agree that if she complies with all terms of

2   the agreement, the appropriate sentence in this case is a

3   sentence of three years incarceration, followed by the

4   appropriate term of supervised release.

5         We agree that if she so complies and the court

6   rejects this sentence, that she will not -- will be permitted

7   to withdraw her guilty plea.

8         So, in other words, she has got to comply with all

9   the conditions of this plea agreement.  She has already

10   provided substantial assistance.  Ms. Sims has cooperated and

11   has been cooperating with the FBI for a number of years.

12         Unfortunately for her, as you will hear, while she

13   was cooperating with the FBI, providing information to the FBI,

14   there have been times when she has violated the law during that

15   period of cooperation.

16         But so -- if -- you have to give her a three-year

17   sentence so long as at the time of sentencing I stand up and

18   tell Your Honor that she is in compliance with the plea

19   agreement.  If you do not give her that sentence and she has

20   been complying, you have to allow her to withdraw her plea.

21   BY THE COURT:

22   Q.  All right.  Ms. Sims, do you understand what he just said

23   to me?

24   A.  (By Ms. Sims)  Yes, sir.

25   Q.  Just to reiterate now, you have agreed upon a three-year

1  sentence with the government, and if you comply fully with your

2  plea agreement, when you come back for sentencing you will be

3  looking at a three-year sentence.

4          If I determine that I cannot go along with that, if I

5  determine that that is not the appropriate sentence in my

6  judgment, I will have to let you withdraw your guilty plea and

7  we can then go back and have a trial.  I'm not telling you that

8  I'm not going to go along with it, but I'm required to tell you

9  that I don't have to go along with it.  All right?

10 A.  (By Ms. Sims)  Yes, sir.

11         MR. MOORE:  And it is three years followed by a term

12 of supervised release.

13 BY THE COURT:

14 Q.  I neglected to say, three years incarceration followed by

15 the appropriate term of supervised release, is what the

16 agreement is; is that correct?

17 A.  (By Ms. Sims)  Yes, sir.

18         MR. MOORE:  That's the plea agreement between the

19 United States and Ms. Sims.

20 BY THE COURT:

21 Q.  All right.  Then with that addition of that unique

22 paragraph, Ms. Sims, is that a correct summary of your plea

23 agreement?

24 A.  (By Ms. Sims)  Yes, sir.

25 Q.  There are certain promises in these plea agreements made by

1    the government to induce you or to bargain with you to plead

2    guilty, has anyone made any promise to you outside of the plea

3    agreement?  In other words, any promise that I do not know

4    about that caused you to plead guilty.  Ms. Sims?

5    A.  (By Ms. Sims)  No, sir.

6    Q.  Mr. Smith?

7    A.  (By Mr. Smith)  No, sir.

8            THE COURT:  All right.  At this time I'm going to ask

9    Mr. Moore, or his case agent, to recite for me the evidence the

10   government has collected in each of these two cases and tell me

11   what the government would be prepared to go forward and attempt

12   to prove if we held a trial.

13           Mr. Moore.

14           MR. MOORE:  Yes, sir.  Ms. Sims has been a long-term

15   affiliate of the Blood Street Gang here in Columbia.  She has

16   associated with members of the Bloods and she provided

17   information about a number of members of the Bloods back in the

18   2007 prosecution, and the companion case that was held before

19   Your Honor.

20           After she cooperated and after the FBI paid her some

21   money to relocate, she decided to come back to Columbia and she

22   re-engaged with a number of members of the Bloods.  As Your

23   Honor knows, we had a series of wiretaps on phones associated

24   with Blood members that Your Honor approved and authorized.

25           And in the course of investigating those

1  court-authorized wiretaps and receiving information that a

2  number of Bloods were involved in prostitution, organized

3  prostitution, by posting names and pictures of women on

4  Backpage, which is an Internet posting service that -- I think

5  I guess I referred to it in my cross memo as a somewhat

6  sleazier version of Craigslist.

7          They would post these pictures on the Internet and

8  johns, or prospective customers, would respond to the listing

9  and a prostitute would appear at the john's place, usually a

10 hotel room.

11         Agents discovered that not only were Bloods doing

12 this, but Ms. Sims was doing it herself.  Ms. Sims was posting

13 pictures of herself on that page and acting as a prostitute,

14 but she was also posting pictures of other women and receiving

15 a cut of their -- the proceeds of their income.

16         One of the women that was posted by Ms. Sims, as well

17 as posted by several other members of the Bloods, was a young

18 lady who was of the age of 16 years at the time of the

19 posting.  Special Agent Jones and other agents at some point

20 during this investigation confronted Ms. Sims, asked Ms. Sims

21 questions.

22         Ms. Sims, as is her wont, admitted to the agents what

23 she had done, she admitted to posting, she admitted to posting

24 herself, other people, and admitted that she knew that this one

25 young lady, whose name I will not reveal because she is truly a

1   victim because she was a minor and could not consent, Ms. Sims

2   readily agreed that she knew that this young lady was of the

3   age of 18 years or less.

4            So the Internet facility, or the interstate facility

5   is the Internet, which obviously is an interstate facility,

6   it's in commerce.  This young lady traveled from Georgia here

7   to prostitute herself, and Ms. Sims profited, and it truly was

8   a commercial sex act.  That is the government's evidence

9   against Ms. Sims.  We have documented evidence from Backpage,

10  we have statements of other people, and we have her own

11  admissions.

12  BY THE COURT:

13  Q.  Ms. Sims, is that a correct summary of your involvement in

14  this activity?

15  A.  (By Ms. Sims)  Yes, sir.

16           THE COURT:  All right.  Very good.  Then tell me

17  about the other case.

18           MR. MOORE:  Mr. Smith, agents have been investigating

19  Mr. Smith for a number of years.  He's been an issue for the

20  Richland County Sheriff's Department for some time, and on

21  February 23rd of 2012, Richland County Sheriff's Department

22  executed a search warrant at the residence of Mr. Smith.  They

23  previously made a buy of crack cocaine from the residence.

24           Upon their entry they detained a Ms. Monet Cooper

25  inside the residence.  They began searching and they found a

1    number of things.  They found cocaine residue, 0.3 grams of

2    cocaine, some baggies containing hydrocodone, a plastic bag of

3    marijuana.  And they found approximately 128.09 grams of crack

4    cocaine, $2,100, and a number of firearms throughout the

5    residence, a 9 millimeter Luger pistol, a Ruger Judge .45

6    caliber pistol, a Smith and Wesson 9 millimeter, a 9 millimeter

7    Kel-Tek pistol, an SKS assault rifle, a Master .22 caliber

8    rifle, multiple pistol magazines, some ammunition, and some

9    other things.

10          Ms. Cooper, who was at the residence, gave a written

11   statement stating that she lived in the house and that she

12   knew -- that Mr. Smith was her boyfriend and he had been

13   selling crack out the house for approximately two years.

14          While Mr. Smith -- Mr. Smith was not at home that

15   day.  Agents later received information that he was actually

16   sitting across the street watching them as they conducted the

17   search.  They arrested him, and intercepted calls between

18   Ms. Cooper and Mr. Smith at the jail where Mr. Smith indicated

19   that he had been watching across the street, that these guns

20   were his, this crack was his, and this money was his.

21          Some of this crack was stored in a barbell in a

22   weight bench.  And one of the witnesses, historical witnesses

23   who provided information to law enforcement, actually told law

24   enforcement that Mr. Smith was known to store the crack that he

25   sold in this barbell.

1              There are several, in addition to this actual seizure

2    of drugs, there are a number of historical witnesses who would

3    testify.  And they would testify that -- as I said, there is

4    one seizure of 128.09 grams of crack, which is not quite half

5    of the 280 gram figure.  But witnesses would testify that

6    Mr. Smith has dealt crack for them on a number of occasions,

7    and the quantity of controlled substances, based on the

8    testimony of witnesses, substantially exceeds 280 grams of

9    crack.

10   BY THE COURT:

11   Q.  All right.  Mr. Smith, is that a correct summary of your

12   involvement in this activity?

13   A.  (By Mr. Smith)  Yes, sir.

14              MR. MOORE:  Obviously the firearms were there to

15   protect the drugs, embolden him, protect his money, and

16   therefore is a violation of 924(c) as well.

17   BY THE COURT:

18   Q.  Mr. Smith, do you agree that the firearms were there to

19   protect the drugs and protect the money?

20   A.  (By Mr. Smith)  Yes, sir.

21              THE COURT:  All right.  Then I'm satisfied that a

22   proper showing has been made in both of these cases.  It is the

23   finding of the court in the case of United States versus

24   Sharonda Shontay Sims and United States versus Michael

25   R. Smith, two separate independent cases, that both defendants

1   have entered a knowing and voluntary plea supported by an

2   independent basis in fact containing each of the essential

3   elements of the offense.  Their respective pleas are therefore

4   accepted and they are now adjudged guilty of the offenses

5   charged against them.  The clerk has a form that each of you

6   will need to sign to record your plea.

7             THE CLERK:  May it please the court, United States of

8   America versus Michael Smith and Sharonda Sims, the defendants

9   having withdrawn their plea of not guilty entered -- plead

10  guilty to count -- Ms. Sims pleads guilty to count 1 of the

11  indictment after arraignment in open court, and Mr. Smith

12  pleads guilty to counts 1 and 4 of the indictment after

13  arraignment in open court, both signed by the defendants.

14            THE COURT:  All right.  The procedure from this point

15  forward will be as follows:  The probation office will assign

16  an officer to work with you to get some information to go in

17  your presentence report.  Once that report is completed you

18  will be given a copy to read over with your attorney.

19            If you think there is anything in there that's

20  incorrect legally or factually, you may file an objection

21  through your attorney.  We will then schedule your sentencing

22  hearing.

23            The first thing we will do, if necessary, is resolve

24  the objections that might have come in.  Then we will calculate

25  the advisory sentencing guidelines and we will then hear from

1    you and your attorney and anyone else that you wish to have

2    speak on your behalf at the sentencing hearing.

3          I just realized that in going through my standard

4    colloquy with Ms. Sims I used my standard language about the

5    sentence imposed may be different from what the attorney may

6    have estimated, and I really probably was in error in going

7    through that language.

8          MR. MOORE:  I mean, actually, if she breaches, then

9    it will be different.

10          THE COURT:  Right.

11          MR. MOORE:  And so I think that when you look at your

12   plea colloquy with her in total, as opposed to just focusing on

13   that one point, I think your colloquy is correct.

14          THE COURT:  Well, I think it's clear what she has

15   agreed to.  All right, thank you very much.

16          THE CLERK:  Bond?

17          MR. MOORE:  Mr. Smith is in custody.

18          Ms. Sims was in custody for a substantial period of

19   time and we agreed -- and I think it was an act of charity, I

20   think Ms. Chapman would probably agree with me there -- to let

21   Ms. Sims out on bond for a period of time so that she could do

22   some things and take care of her affairs.

23          I told Ms. Chapman at the time that I agreed to it

24   that I would be asking to take Ms. Sims into custody at the

25   time of her plea, and Ms. Chapman understood that that would be

1   my position.  She doesn't necessarily agree with it but she

2   understands that that is my position.

3            Because she has pled guilty to an offense with a

4   10-year mandatory minimum, she has -- she is clearly going to

5   jail -- and one of the reasons why we moved to detain Ms. Sims

6   in the beginning was because we were concerned for her own

7   safety.  She has cooperated against a number of the members of

8   the Bloods.  Special Agent Jones has some things that he just

9   needs to advise her of and show her here.

10           But I'm concerned.  I think her mother is probably

11  concerned about her continuing to stay with her.  And it is --

12  and Ms. Sims also has a history -- while she's -- when agents

13  come to talk to her, she is brutally honest, which is good and

14  bad, I mean, because she tells them the truth when they come to

15  talk to her about her own criminal activities.

16           But she has a bad habit of not being able to resist

17  temptation.  And had she done what she was supposed to do years

18  ago and stayed out of Columbia and stopped associating with

19  these Bloods, then she would not be sitting here before Your

20  Honor today.  Because she was not charged initially.  We could

21  have charged her with racketeering, we could have charged her

22  in the Bloods indictment, we chose not to do so.

23           But I think that under the provisions of the Bail

24  Reform Act, given the seriousness of the offense to which she

25  has pled guilty to, which is prostituting a minor in interstate

1   commerce, and I have never had someone stay out on bond after

2   they had pled guilty to such an offense, I have to ask Your

3   Honor to take her into custody at this time.

4           And I do think it is in her best interests -- A, for

5   safety and, B, so that we can insure that she is going to abide

6   by the terms of this agreement so that she will get that

7   11(c)(1)(C) -- that Your Honor take her into custody.

8           THE COURT:  You said she couldn't resist temptation,

9   is that in terms of illegal substances or what?

10          MR. MOORE:  Illegal activities more so than illegal

11  substances.  I think she has a hard time staying away from

12  people that she knows she should stay away from, and a hard

13  time in not engaging them and engaging herself in their

14  criminal activities.

15          THE COURT:  Ms. Chapman?

16          MS. CHAPMAN:  Your Honor, I would probably have to

17  agree that everything that Mr. Moore just told you is the

18  truth.  Judge, I will tell you my client has been out, she has

19  been on home electronic monitoring, she hasn't violated

20  anything, she hasn't tested positive.

21          However, I told her that this is the Mandatory

22  Detention Act and I felt almost certain that you would take her

23  into custody.  I guess if that's the ruling of the court -- my

24  concern is, because I know that she was in Spartanburg, I want

25  to make sure that she goes -- she doesn't want to go back to

1    Spartanburg, but, Judge, I think it's in her best interest,

2    only because I think there are some other co-defendants --

3              THE COURT:  Some other what?

4              MS. CHAPMAN:  -- other co-defendants in Lexington,

5    and that trial is scheduled to start next week.  I don't know

6    who all is testifying in that trial, but I think most of the

7    co-defendants are still in Lexington.

8              MR. MOORE:  Most of those defendants are in

9    Lexington.  I think the marshals' current plan for her is to

10   put her in protective custody in Lexington until such time as

11   they can move her.  And you don't have the harm -- and if --

12   once Your Honor puts her into custody, the marshals are

13   informed as to security issues, I think it's their decision as

14   to where she goes.  But I certainly asked them to take her

15   outside the Columbia area, and they did, they agreed to that

16   request in the past.

17             I just don't want anything to happen to Ms. Sims, and

18   there are plenty of people in this Bloods case who are violent

19   who are angry with her.

20             THE COURT:  Right.  I think it's definitely in her

21   best interest.

22             Ms. Sims, I don't want to see something bad happen to

23   you.  You have obviously impressed the government because they

24   agreed to give you a sentence of one third of what you are

25   supposed to get.

1          But did you say you wanted her to go to Spartanburg,

2     a facility in Spartanburg?

3          MS. CHAPMAN:  Judge, as long as it is just not

4     Lexington.  It doesn't matter.  I think she was scheduled to

5     trial -- to be a witness in this trial, but I don't believe --

6          MR. MOORE:  Given the fact that it's only Mr. Hall,

7     now, we are not calling her as a witness.

8          MS. CHAPMAN:  So, I mean, it makes no difference to

9     me where she goes as long as she doesn't stay in Lexington.  I

10    worry about that.

11         THE COURT:  I'm usually reluctant to get too much

12    into the marshals' business of taking people places, but I do

13    think I should just issue a strong recommendation that she not

14    be taken to Lexington if at all possible for her own safety.

15         Can y'all see if she can go somewhere else?

16         THE DEPUTY MARSHAL:  In terms of when she leaves

17    here, go somewhere today?

18         THE COURT:  Not necessarily today, maybe short term

19    in Lexington, but eventually take her to some other facility

20    that y'all have a contract with?

21         THE DEPUTY MARSHAL:  Just as before, Your Honor, we

22    will make sure that she is somewhere else.

23         THE COURT:  Well, Ms. Sims, I'm going to require you

24    to go into custody today.  You may have to go to Lexington for

25    one day, or a short time, but then we are going to try to get

1    you somewhere else, okay?

2              And you have got three years to serve, so you might

3    as well go ahead and start serving it, because you will get

4    credit for all this time.

5              All right.

6              (Thereupon, the proceedings were djourned.)

7    * * * * * * * * * * * * * * * * * * * * * * * * *

8                         CERTIFICATE OF REPORTER

9

10             I certify that the foregoing is a correct transcript

11   from my stenographic notes in the above-entitled matter.

12

13   s/ Gary N. Smith                    December 11, 2013

14   _____      _____
     Gary N. Smith, CM
15   Official Court Reporter
     United States District Court
16   District of South Carolina

17

18

19

20

21

22

23

24

25